IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LAZY Y RANCH, LTD.,       ) | |
|              ) | Case No. CV 06-340-S-MHW |
|       Plaintiff,    ) | |
|              ) | |
| v.                 ) | **MEMORANDUM DECISION** |
|              ) | **AND ORDER** |
| WINSTON WIGGINS, JIM RISCH, BEN  ) | |
| YSURSA, MARILYN HOWARD,     ) | |
| LAWRENCE WASDEN, KEITH      ) | |
| JOHNSON, TRACY BEHRENS,     ) | |
| GEORGE BACON, WALLY BUTLER,   ) | |
| AND DOES 1-20,           ) | |
|              ) | |
|       Defendants.   ) | |
| _____) | |

Currently pending before the Court are State Defendants' Motion to Dismiss (Docket No. 25), filed November 2, 2006; Defendant Wally Butler's Motion to Dismiss (Docket No. 32), filed November 13, 2006; and Plaintiff's Objection and Motion to Strike State Defendants' Declarations and Exhibits (Docket No. 39), filed December 11, 2006.

## I.
## Background

This case involves the "endowment lands" granted by the United States to Idaho when it became a state in 1890. Two sections of land in every township were granted for the support of common schools and other public institutions. The Idaho Constitution charges the State Board

**Memorandum Decision and Order - Page 1**

of Land Commissioners ("the Land Board") with the responsibility for the direction, control and disposition of the endowment lands of the state.  Idaho Const., Art IX, § 7.  The Idaho Constitution also provides that it is the duty of the Land Board to provide for the "location, protection, sale or rental of all the lands...in such manner as will secure the maximum long-term financial return to the institution to which [the land] is granted."  *Id.*, § 8.  It also allows for the legislature to provide by law that these lands be "carefully preserved and held in trust, subject to disposal at public auction for the use and benefit of" public schools and other public institutions. *Id*.

Pursuant to the authorization given in the Idaho Constitution, the Idaho Legislature has adopted statutes to guide the Land Board's management of these lands.  These statutes provide that no lease of public school endowment lands "shall be for a longer term than ten (10) years" and that when two or more persons apply to lease the same land "the director of the department of lands...shall...auction off and lease the land to the applicant who will pay the highest premium bid therefor..."  IDAHO CODE §§ 58-308, 58-310.  I.C. § 58-310(4) also states that the Land Board has the power to "reject any...bids..., when in their judgment there has been fraud or collusion, or for any other reason which in the judgment of [the Land Board] justified the rejection of said bids."  At the beginning of every calendar year, the Idaho Department of Lands ("IDL") gives public notice of all 10-year leases that are expiring on December 31 of that year and offers the public the opportunity to apply for new 10-year leases.

Plaintiff Lazy Y Ranch, Ltd. ("Plaintiff") is a Washington corporation, registered to do business in Idaho.  It alleges in its First Amended Complaint (Docket No. 4) that in early 2005, the IDL gave public notice of state endowment land grazing leases that would expire at the end

of 2005 and for which the IDL was accepting applications from qualified members of the public. Plaintiff alleges that in giving this notice, the IDL represented that the parcels of land were available for lease by qualified members of the public, and not just the prior lessees or adjoining property owners.  Plaintiff submitted applications to the IDL in April 2005 for the following expiring grazing leases: Lease Nos. G-4008 (Swamp Creek); G-4049 (Lower Corral Creek); G-4051 (Bob Parkins); G-4052 (East Fork); G-4054 (Mason Butte); G-4055 (Helmer Allotment); G-4056 (Round Meadows); G-4057 (Jim Ledgerwood); and G-4608 (Squaw Creek).  Plaintiff represents that it complied with all requirements of the IDL's rules and regulations for grazing lease applications, including paying all required fees and submitting the required "Cropland and Grazing Certification."  With one exception (Lease No. G-4049), the prior lessees for all these parcels also submitted applications for new leases, as did some third parties.  This created a need for "conflict" auctions under I.C. § 58-310.

Because there were competing applications, on May 6, 2005, Defendant Tracy Behrens ("Defendant Behrens"), who was then employed as the IDL Range Program Manager, sent Plaintiff a letter informing it that more than one lease application had been received for expiring leases G-4008, G-4049, G-4052, G-4054, G-4055, G-4056, G-4057 and G-4608.  This letter also advised Plaintiff that in the future it would be informed of the time and place for an auction.  In addition, all applicants had to submit a management proposal that addressed all resource concerns identified by the IDL by May 30, 2005.  Plaintiff alleges it obtained a "resource assessment" from the IDL in order to development management proposals consistent with its resource concerns.  Plaintiff maintains it timely submitted the required management proposals within the May 30, 2005 deadline and that such proposals included statements that Plaintiff

would improve vegetation, prevent livestock damage, not exceed maximum specified AUM carrying capacity on the allotment, and bring streams into compliance with the Clean Water Act. Since Plaintiff was not a preexisting lessee but a new entity attempting to enter the ranching market, the proposals also stated that it would "identify exact stocking rates, timing of livestock movement, and other management issues, after applicant has undertaken a site-specific evaluation and determined how this allotment will fit within its overall operations."

Defendant Behrens sent a letter to Plaintiff on June 1, 2005 recognizing that the proposals were timely submitted but asserting that the management proposals did not "satisfy the department's requirements for grazing management proposals" and they would "need to be modified before they [would be] deemed acceptable." This letter set a new deadline of June 17, 2005 for Plaintiff to submit "amended, acceptable proposals." Plaintiff urges that the IDL has routinely leased state endowment land for grazing to many other parties without requiring more specific proposals than what Plaintiff had submitted. Plaintiff also asserts that the proposals of the existing lessees stated they would continue their past management practices which caused, in part, resource degradation. Plaintiff argues that with this letter, the Defendants began the unlawful practice of treating Plaintiff differently than other similarly situated parties seeking to obtain the same leases. Plaintiff maintains that Defendants were motivated in these actions by personal animus and hostility to Plaintiff based on its perceived connection to conservationists.

This back and forth between the Plaintiff and the IDL continued until late July 2005 when the IDL finally accepted Plaintiff's proposals and notified Plaintiff that its applications were complete. In August 2005, the IDL scheduled auctions for five of the leases, for which the prior lessees had also put in applications for. Plaintiff was the high bidder at all five auctions,

offering a total of $13,050 in premium bids to obtain the leases.  Plaintiff alleges that as the high bidder at the auctions, it was presumptively entitled to the award of the leases.  Plaintiff points to the Idaho Constitution, Idaho statutes and decisions from the Idaho Supreme Court in support of this contention.  (*See* Plaintiff's Combined Brief Opposing State Defendants' and Butler's Motions to Dismiss, "Plaintiff's Response," pp. 5-7.)

Plaintiff next alleges that Defendant Wally Butler ("Defendant Butler") orchestrated efforts, including appealing the auctions, to deprive Plaintiff of the leases.  Defendant Winston Wiggins ("Defendant Wiggins"), then IDL Director, invalidated the auction results in September 2005, for the reason that the IDL failed follow its policy and give Plaintiff's management proposals to the competing bidders before the auctions.  Plaintiff maintains there is no such requirement and that Defendant Wiggins took this action without providing notice to Plaintiff and without awaiting the results of the appeals filed by Defendant Butler with the Land Board. Plaintiff sought review by the Land Board of this auction invalidation (comprised of Jim Risch, Lawrence Wasden, Ben Ysursa, Marilyn Howard, and Keith Johnson, collectively "Land Board Defendants").  After a delay of several months, the Land Board Defendants ultimately approved Defendant Wiggins's decision and in February 2006, scheduled new auctions.  As a result, Plaintiff argues that the prior lessees had continued use of the endowment land properties and public schools were deprived of revenues that would have been realized through the auctions.  In addition, Plaintiff asserts that its efforts to start its ranching operation were thwarted by the Land Board's decision.

The new auctions for six leases[1] took place in June 2006 and Plaintiff was the high bidder

---

[1] These included the five leases Plaintiff has already bid on in August 2005 and one additional lease over which the IDL and Plaintiff had resolved a dispute regarding the value of an existing fence.

at all six auctions.  In outbidding the prior lessees, who bid lower in June 2006 than they did in August 2005, Plaintiff's bids totaled $5825.  Plaintiff maintains that at no time during this entire process did the Defendants ever advise Plaintiff that the IDL might incur additional administrative costs or management difficulties if Plaintiff obtained the leases instead of prior lessees.  Plaintiff submits that no losing bidders appealed these auction results but that Defendant Wiggins put the results of the June 2006 auction on the agenda for the Land Board's August 2006 meeting.  According to Plaintiff, four business days before the Land Board's August 2006 meeting, it was first given notice by Defendants Wiggins and Behrens that they had recommended the Land Board award the six leases to the lower bidders.  The given reason was that awarding Plaintiff these leases would cause a "significant increase in administrative costs." (*See* Plaintiff's Response, pp. 9-10.)   Plaintiff alleges that Defendants Wiggins, Behren, and George Bacon all met with Defendant Butler, as well as other livestock industry lobbyists and representatives, several times in the months preceding the August 2006 Land Board meeting and discussed how to deal with Plaintiff's lease applications.  Plaintiff states that it was never asked to participate in these meetings and was deliberately excluded.  Plaintiff argues that this is evidence of the alleged conspiracy between Defendants Wiggins, Behrens, Bacon, Butler and others to deprive Plaintiff of the leases.

In response to this assertion of "increased administrative costs," Plaintiff wrote to Defendant Wiggins objecting that these concerns had never been raised in the past.  Plaintiff also expressly offered to "provide additional fencing and/or pay for additional administrative costs incurred, up to $30,000 over the course of the new 10-year leases, or such additional amount as many be shown as reasonably necessary."  Plaintiff maintains that because it agreed to reimburse

any such "increased administrative costs," the assertion of increased administrative costs is objectively false.  Plaintiff also refutes the extra administrative costs that would be incurred by the IDL.  (*See* Plaintiff's Response pp. 11-12.)  At the August 2006 Land Board meeting, the Land Board Defendants awarded the leases to the lower bidders from the June 2006 auction, based on the alleged "increased administrative costs" rationale.  Plaintiff also maintains that this same set of circumstances occurred in regards to a seventh lease at the September 2006 Land Board meeting.

Plaintiff filed its Complaint on August 28, 2006 against Defendants Wiggins, Risch, Ysursa, Howard, Wasden, Johnson, Behrens, Bacon and Butler alleging intentional and willful deprivation of Plaintiff's constitutional and legal rights in violation of 42 U.S.C. § 1983, specifically that Plaintiff was deprived of rights, privileges and immunities secured by the Fifth and Fourteenth Amendments of the United States Constitution and the guarantees of due process and equal protection under the law.  Plaintiff amended its complaint on September 13, 2006 to include the events involving the seventh lease.  Defendants Wiggins, Risch, Ysursa, Howard, Wasden, Johnson, Behrens and Bacon (collectively, "the State Defendants") filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on November 2, 2006.  On November 13, 2006, Defendant Butler filed a Motion to Dismiss as well.

## II.
### Plaintiff's Motion to Strike State Defendants' Declarations and Exhibits

Attached to their Motion to Dismiss, the State Defendants submitted two declarations, one of Defendant Behrens, the other of Susan Terry, the Management Assistant to the Director of the IDL.  The Behrens Declaration has one exhibit attached to it, a copy of a memo dated June 8, 2005 from Defendant Behrens to Mr. Alkire, Secretary of Lazy Y Ranch.  The Terry Declaration

has ten attached exhibits which includes the final minutes and transcripts for the Land Board meetings on February 12, 2006, August 8, 2006, and September 12, 2006 as well as Department of Land Memorandums submitted at these meetings.  There is also an August 3, 2006 letter from Gordon Younger, President of Lazy Y Ranch, to Defendant Wiggins which was submitted at the August 8, 2006 meeting.  Plaintiff moved to strike these declarations and exhibits on December 11, 2006.

Plaintiff argues that the express language of Fed. R. Civ. P. 12(b)(6) limits the Court to considering only the factual allegations of the First Amended Complaint in determining whether Plaintiff has alleged viable section 1983 claims.  As to the State Defendants' assertion that the Court may properly consider their exhibits as documents referenced in the First Amended Complaint, Plaintiff points out that none of these documents are attached to or incorporated into the First Amended Complaint and many are not even referenced at all - including the Land Board transcripts and minutes.  Additionally, Plaintiff urges that the "increased administrative costs" rationale advanced by the State Defendants is objectively false, and it is not appropriate for the Court to consider these extrinsic documents in a Rule 12(b)(6) motion since their reliability and accuracy have been called into question.

Secondly, Plaintiff argues that the State Defendants' contention that these exhibits are "subject to judicial notice under Fed. R. Evid. 201" fails because the State Defendants have not satisfied the predicates for judicial notice under Rule 201.  Plaintiff maintains that Rule 201 only allows judicial notice of an "adjudicative fact" that is "not subject to reasonable dispute."  As Plaintiff disputes the accuracy of the "facts" advanced by the State Defendants in these documents, it urges these documents are not fit for judicial notice.

**Memorandum Decision and Order - Page 8**

The State Defendants maintain that exhibits containing documents referred to in a complaint may be considered in a motion to dismiss.  Even if these documents are not physically attached to the complaint, so long as their authenticity is not questioned, the State Defendants submit that the Court may consider them in ruling on a Rule 12(b)(6) motion. *See Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994).  The State Defendants note that five of the exhibits (Behrens Decla., Ex. 1; Terry Decla., Exs. 3, 6, 7, 10) are referred to in Plaintiff's Amended Complaint and are properly before the Court on this Motion.  Additionally, the State Defendants argue that the Court is not being asked to accept the facts, i.e. the "administrative costs" justification, in these exhibits as true but rather whether such justification is a "plausibly rational basis for the [Land] Board's action..."  (Memorandum in Opposition to Strike Declarations by State Defendants, p. 5.)

As to their judicial notice argument, the State Defendants maintain that a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.  *See Lee v. City of Los Angeles*, 250 F.3d 688 (9th Cir. 2002).  They also submit that these are "adjudicative facts" for purposes of resolving motions to dismiss and that since Plaintiff does not dispute the exhibits' authenticity, Fed. R. Evid. 201(b)(2) is satisfied.

**A.     Discussion**

Fed. R. Civ. P. 12(b) states that if a party is asserting a Rule 12(b)(6) motion to dismiss for failure of the pleading to state a claim upon which relief can be granted and "matters outside the pleading are presented to and not excluded by the court, the motion should be treated as one for summary judgment" under Rule 56 and all parties shall have the opportunity to present all pertinent material.  *See Carter v. Stanton*, 405 U.S. 669 (1972).  Generally, the scope of review

on a Rule 12(b)(6) motion to dismiss is limited to the contents of the complaint.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  However, there are two exceptions to this general rule.  First is that a court may consider documents that are submitted as part of the complaint or documents that are not physically attached to the complaint but that the complaint "necessarily relies" on, if authenticity is not contested.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  The other exception, which will be discussed in detail later, is "matters of public record" that a court may take judicial notice of.  *Id*. at 689.  As to the first exception, a court may consider extrinsic evidence that a complaint "necessarily relies" on if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  This is also known as "incorporation by reference."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  A document will be incorporated by reference if the plaintiff "refers extensively to the document or the document forms the basis of the plaintiff's complaint."  *Id*.  Some examples of documents that have been incorporated by reference include the contents of a coverage plan in a claim about insurance coverage and SEC filings when a claim for stock fraud was based on their content.  *Id*.  Other examples of this exception include a court considering the full texts of documents which the complaint quoted only in part, however another court did not consider transcripts of conference calls because the plaintiff disputed their authenticity, accuracy and objected to their use.  *Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997).  The Ninth Circuit has also noted that affidavits and declarations attached to a Rule 12(b)(6) motion did not form the basis of plaintiff's complaint and as plaintiff did not refer extensively to any of the documents, the district court properly did not consider them.  *United*

**Memorandum Decision and Order - Page 10**

*States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

The First Amended Complaint does quote excerpts from the Behrens Declaration's Exhibit 1 and from the Terry Declaration's Exhibits 6 and 7.  It also refers to the Terry Declaration's Exhibits 3 and 10 and the meetings that make up the minutes and transcripts in the Terry Declaration's Exhibits 1, 2, 4, 5, 8 and 9.  The State Defendants argues these first five exhibits (Behrens Decla., Ex. 1; Terry Decla., Exs. 3, 6, 7, and 10) should be incorporated by reference.  Although these five exhibits are all referenced in Plaintiff's First Amended Complaint, they do not necessarily "form the basis" of the complaint, as compared to how a contract in a breach of contract case would form the basis of a complaint.  However, in following *Cooper v. Pickett*, three of the exhibits (Behrens Decla., Ex. 1; Terry Decla Exs. 6 and 7) will be incorporated by reference because portions of these documents are quoted in the First Amended Complaint.  However, the other exhibits are not what the courts had in mind when they stated documents that the complaint "necessarily relies on" or documents that "form the basis of" the complaint can be incorporated by reference.  These exhibits do not form the basis of Plaintiff's complaint.

As for the judicial notice exception to the general rule, Fed. R. Evid. 201(b) allows for the judicial notice of adjudicative facts that are "not subject to reasonable dispute in that they are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  The Ninth Circuit has stated that a court may take judicial notice of "matters of public record" without turning a Rule 12(b)(6) motion into a motion for summary judgment.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  However, a court may not take

judicial notice of a fact that is subject to reasonable dispute.  *Id.*

Examples of the types of facts that are typically taken judicial notice of include: matters of geography, history, language and word usage, current events, economics; court records and materials in court files; and administrative proceedings or court records in related proceedings involving one or more of the same parties.  *See* 1 MUELLER & KIRKPATRICK, FEDERAL EVIDENCE §§ 50-51 (2d ed. 2006).  The documents that the State Defendants want the Court to take judicial notice of are not the type of documents typically subject to judicial notice and accordingly, the Court will not take judicial notice of them.  Additionally, even if all these exhibits were considered, it does not affect whether Plaintiff properly alleged a claim under 42 U.S.C. § 1983 and therefore survives a Rule 12(b)(6) motion.

### III.
### Defendants' Motion to Dismiss

**A.    Standard of Review**

A motion to dismiss should not be granted "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754 (9th Cir. 1994).  When a complaint or portion thereof is tested as to the legal sufficiency of the claims for relief, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir. 1991), *cert. denied,* 506 U.S. 909 (1992).  The issue is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence in support of the claims.  *Gilligan v. Jamco Devel. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  There is a strong presumption against dismissing an action for failure to state a claim.  *Id.*

**B.      State Defendants' Motion to Dismiss**

**1.      Equal Protection Claims**

The State Defendants first argue that Plaintiff is not similarly situated as the other bidders

and for that reason alone, its claims must fail.  Their main argument, however, is that traditional

equal protection principles apply in this case, even if it is a "class of one" case, and that they

need only provide a rational reason for their decisions.  Once the State Defendants have provided

a rational basis for their actions and decisions, they contend the inquiry is finished and the case

can proceed no further.  The State Defendants submit that they have given rational reasons for

their decisions to invalidate the auctions,[2] and accordingly, the case should be dismissed.  The

State Defendants also point out that the First Amended Complaint should be dismissed as to the

IDL Defendants (Defendants Wiggins, Bacon and Behrens) because that it was the Land Board,

and not the IDL Defendants, who was the ultimate decision-maker with respect to directing new

auctions and to accepting or rejecting Plaintiff's bids at the auctions.

In response to the State Defendants' Motion to Dismiss, Plaintiff first argues that the

Motion is improperly based on extrinsic materials and that it would be reversible error for the

Court to consider these materials.[3]  Next, Plaintiff asserts it has satisfied the pleading

requirements for section 1983 claims because only two allegations are required, that some person

deprived plaintiff of a federal right and that person acted under color of state or federal law, and

it has alleged both these requirements in its First Amended Complaint.  *See Gomez v. Toledo*,

---

[2]  These rational reasons the State Defendants refer to are:  for the February 2006 decision, that they had failed to provide copies of the conflicting management proposals to all the bidders as their policy required; and for the August and September 2006 decisions, that there would be increased administrative costs if the leases were awarded to Plaintiff.

[3]  This is addressed more thoroughly in Plaintiff's Motion to Strike discussed above.

446 U.S. 635 (1980).

In response to the State Defendants' main argument regarding the equal protection principles to be applied in this case, Plaintiff urges that even when rational basis review applies, state actors still cannot engage in arbitrary, irrational, or pretextual actions. Plaintiff maintains that as it has properly alleged that the actions taken against it were based on animus and hostility, it must survive this Rule 12(b)(6) motion to dismiss.

To state a claim for relief under section 1983, a plaintiff must plead two essential elements: 1) that defendants acted under color of state law and 2) that defendants caused him to be deprived of a right secured by the Constitution or laws of the United States. *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997). *See Gomez v. Toledo*, 446 U.S. 635 (1980). In *Gomez*, the United States Supreme Court found that the required allegations were satisfied because it was alleged that petitioner's discharge was in violation of his right to procedural due process and that respondent acted under color of law. *Id.* at 640.

The Equal Protection Clause ensures that all similarly situated persons should be treated alike. *Squaw Valley Devel. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004). If a fundamental right, such as voting, or suspect classification, such as race or nationality, is not implicated, the challenged state action must only bear a rational relation to a legitimate state interest. *Armendariz v. Penman*, 75 F.3d 1311, 1316 (9th Cir. 1996). However, even the rational relation test will not sustain state action that is malicious, irrational or plainly arbitrary. *Id*.

Plaintiff has stated factual allegations that, when taken as true and construed in its favor, do properly allege an equal protection claim. Plaintiff has alleged that the State Defendants were

**Memorandum Decision and Order - Page 14**

acting under color of state law and engaged in their official capacities as Idaho Department of Land employees or members of the State Land Board, when the actions against Plaintiff were taken.  (*See* First Amended Complaint ¶¶ 9, 14, 23-24, 28, 32-33, 47-52, 55-59, 65-68, 71, 75-81, 83, 88, 90, 92-112.)

Plaintiff has also alleged that the State Defendants treated it differently than other lease applicants and that such actions were motivated by animus and hostility towards Plaintiff.  (First Amended Complaint, ¶¶  24, 50, 77, 94.)  Plaintiff alleged that the State Defendants' reasons given for invalidating the auctions were pretextual and objectively false.  (*Id.* at ¶¶  68, 77, 99.) Plaintiff also alleged that "Defendants discriminated unlawfully against [Plaintiff]...singled out [Plaintiff]...and imposed upon it demands and requirements not imposed on others who are similarly situated; and have subjected Plaintiff to arbitrary, unfair and discriminatory treatment that is not rationally related to any legitimate state objective or interest."  (*Id.* at ¶ 99.)  It alleged that at all times Plaintiff enjoyed equal protection rights under the Fourteenth Amendment of the United States Constitution, including the right to be free from discriminatory and unfair treatment.  (*Id.* at ¶ 102.)  Plaintiff has also alleged facts and events that, if true, would support its allegations of being treated arbitrarily and with animus.  Many of these facts are discussed at the beginning of this decision, including allegations of how Plaintiff's lease applications were handled by the State Defendants and how the auctions in which Plaintiff was the high bidder were later invalidated by the State Defendants.

Recently the United States Supreme Court, in reviewing a Rule 12(b)(6) motion, stated that a complaint's allegation that a city's action was "irrational and wholly arbitrary" was "sufficient to state a claim for relief under traditional equal protection analysis."  *Village of*

*Willowbrook v. Olech*, 528 U.S. 562, 565 (2000).  This case, when considered with the Ninth

Circuit's finding that the 1983 complaint in *Johnson v. Knowles* stated a cause of action, make it

clear that the allegations Plaintiff has alleged in its First Amended Complaint are sufficient to

survive a Rule 12(b)(6) motion to dismiss.  This is especially the case since the Rule 12(b)(6)

standard dictates that the Court must take all allegations of material fact in the complaint as true

and construe them favorably to the nonmoving party.  Under this test, Plaintiff has sufficiently

alleged an equal protection violation.

       **2.**      **Qualified Immunity**

       In the alternative, the State Defendants request that the First Amended Complaint's

claims for monetary relief be dismissed on qualified immunity grounds.  The State Defendants

maintain that Plaintiff's equal protection claim falls under the unique competitive rights situation

which differs substantially from cases where "class of one" liability has been found and because

this case is factually different from cases where liability has been found, it is outside the reach of

clearly established law and qualified immunity applies.  The State Defendants urge that there is

no clearly established law which stands for the proposition that ordinary equal protection

principles are suspended merely because a plaintiff alleges that action was taken with improper

motivation, and this is especially the case in a competitive rights situation.

       In response, Plaintiff urges that the law is clearly established in this area because there is

a long line of Supreme Court and Ninth Circuit cases that give "fair warning" to the State

Defendants that they could be in violation of the Equal Protection Clause by using objectively

false or pretextual reasons to deny Plaintiff the leases it had the high bids on.  *See Village of*

*Willowbrook v. Olech*, 528 U.S. 562 (2000); *Aremendariz v. Penman*, 75 F.3d 1311 (9th Cir.

1996); *Squaw Valley Devel. Co. v. Goldberg*, 375 F.3d 936 (9th Cir. 2004). Additionally, the Plaintiff submits that the constitutional requirements relating to the endowment lands and Idaho Supreme Court cases establish that the State Defendants cannot discriminate against Plaintiff to protect existing lessees from competition. *See Idaho Watersheds Project v. State Bd. of Land Comm'rs*, 133 Idaho 64, 982 P.2d 367 (1999); *Idaho Watersheds Project v. State Bd. of Land Comm'rs*, 128 Idaho 761, 918 P.2d 1206 (1996).

Government officials performing discretionary functions are entitled to qualified immunity from civil damages liability as long as their actions could have been reasonably thought to be consistent with the rights they are alleged to have violated. *Anderson v. Creighton,* 483 U.S. 635, 638 (1987). The threshold question that lower courts are to address is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If not, then "there is no necessity for further inquiries concerning qualified immunity." *Id.* If so, then "the next sequential step is to ask whether the right was clearly established." *Id.* A constitutional right is clearly established when "on a favorable view of the parties' submissions... it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201-02.

It has already been decided that, at this early stage in the proceedings, the facts taken in the light most favorable to the Plaintiff do properly *allege* a constitutional violation. It is not for the Court to decide at this stage whether the facts demonstrate that there was an actual constitutional violation. On a Rule 12(b)(6) motion, the Court only looks at the complaint and does not evaluate the actual facts.

As to the next step in the qualified immunity analysis, it is clearly established law that the Equal Protection Clause protects every person "against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook*, 528 U.S. 562, 564 (2000).  This statement of law goes back to a 1918 United States Supreme Court case.  *See Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350 (1918).  Additionally, the Ninth Circuit has repeatedly stated that there is no rational basis for state action that is "malicious, irrational or plainly arbitrary."  *See Squaw Valley Devel. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004); *Armendariz v. Penman*, 75 F.3d 1311, 1326 (9th Cir. 1996); *Lockary v. Kayfetz*, 917 F.2d 1150, 1155 (9th Cir. 1990).  The law seems clearly established on this point and Plaintiff's claim will not be dismissed on qualified immunity grounds at this time.

### 3.    Due Process Claims

The State Defendants also moved to dismiss Plaintiff's procedural and substantive due process claims on the grounds it did not have a protected property interest in its auction bid being accepted.  On December 11, 2006, Plaintiff voluntarily dismissed its due process claims with prejudice.

## C.    Defendant Butler's Motion to Dismiss

In addition to adopting the State Defendants' arguments, Defendant Butler also argues that since he is a private citizen who was simply an advocate for ranchers and bidders, he is one more step removed from the allegedly improper actions of the Land Board.  Defendant Butler also maintains that Plaintiff's allegations are inadequate to make him an alleged co-conspirator. He submits that Plaintiff must state specific facts, such as existence of an agreement to act in

concert to inflict an unconstitutional injury and an act done in furtherance, to support the existence of a conspiracy and Plaintiff has failed to do so.  He argues that all Plaintiff has established in its First Amended Complaint is that he was a consultant for lessees involved with the leases in question and advocated for their position, not that he was engaged in an unlawful plan.  Lastly, Defendant Butler argues that Plaintiff has an adequate state court remedy for seeking review of Land Board decisions under I.C. § 67-5279 and there is no need to raise constitutional claims.  He urges that Plaintiff must exhaust his remedies under state law before bringing a constitutional claim.

In response to Defendant Butler's additional arguments, Plaintiff first argues it has met the pleading requirements for alleging a conspiracy claim against a private person under section 1983 because it need only allege a violation of a right protected by section 1983 and actions taken in concert with intent to violate that right.  Plaintiff urges that as this is only at the Rule 12(b)(6) stage, testing the adequacy of Plaintiff's evidence is not appropriate at this time. Plaintiff points out it has identified specific facts that Defendant Butler met on several occasions with some of the State Defendants to discuss Plaintiff's lease applications and high auction bids and Plaintiff has alleged that at these meetings, the pretextual "administrative costs" rationale was developed.  As for Defendant Butler's state court remedy argument, Plaintiff maintains that there is no exhaustion requirement for section 1983 claims and accordingly, it was appropriate for it to bring a constitutional claim.

A private party may be considered to have acted under color of state law, for purposes of section 1983, when it engages in conspiracy or acts in concert with state agents to deprive one's constitutional rights.  *Fonda v. Gray*, 707 F.2d 435, 437 (9th Cir. 1983).  To establish a

**Memorandum Decision and Order - Page 19**

conspiracy under section 1983, a plaintiff must show an agreement, or meeting of the minds, to violate constitutional rights. *Id*. at 438. A party must provide material facts that show an agreement among the alleged conspirators to deprive a party of his civil rights. *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998).[4] At the motion to dismiss stage, the complaint must establish conspiracy in some detail and provide some factual basis supporting the existence of a conspiracy. *Spiegel v. City of Chicago*, 920 F. Supp. 891, 899 (N.D. Ill. 1996).

Plaintiff does not allege any specific agreement or "meeting of the minds" between Defendant Butler and the State Defendants to deprive Plaintiff of its constitutional rights, but does allege that these Defendants met together and discussed the leases in question and at these meetings, the "increased administrative costs" rationale was developed. The First Amended Complaint does allege a conspiracy to deprive Plaintiff of its constitutional rights but vague and conclusory allegations alone are not be sufficient to survive a motion to dismiss. *See Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

At this stage, the Court finds that the allegations against Butler are vague, conclusory and unsupported by factual allegations. That being said, once discovery is under way additional facts might be developed to support the conspiracy allegation. Therefore, Butler will be dismissed without prejudice.

As to Defendant Butler's exhaustion of state remedies argument, the United States Supreme Court has expressly stated that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to [section] 1983." *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982). Accordingly, this argument of Defendant

---

[4] Both *Fonda v. Gray* and *Margolis v. Ryan* were decisions made at the summary judgment stage.

Butler's is without merit.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1)      State Defendants' Motion to Dismiss (Docket No. 25), filed November 2, 2006, be DENIED.

2)      Defendant Butler's Motion to Dismiss (Docket No. 32), filed November 13, 2006, be GRANTED.  Defendant Butler is DISMISSED WITHOUT PREJUDICE.

3)      Plaintiff's Motion to Strike State Defendants' Declarations and Exhibits (Docket No. 39), filed December 11, 2006, be GRANTED IN PART AND DENIED IN PART.

DATED:  March 13, 2007

Honorable Mikel H. Williams
United States Magistrate Judge

**Memorandum Decision and Order - Page 21**